Mr. Kardell was entitled to trial on the merits of his three claims under Section 1983, the Oregon whistleblowing statute, for both free speech, whistleblowing, and violation of his due process rights as a public employee. As Defendant Gardner said it himself in an email, the defendants recognized Mr. Kardell's free speech rights, but decided that the exercise of those rights would not be without consequence. In short, the defendants would have us go back to the battle in which public employees had the right to talk politics but not the right to remain public employees. So I understand the district courts were looking at this case. It was solely on the basis that whatever statements your client may have made, and may or may not have expressed dismissal because the court never got there, they were not related to matters of public concern. Do I understand that the district courts really agree on it? The district court decided first, as your Honor suggested, that Mr. Kardell's speech did not relate to a matter of public concern. Right. And second, that Mr. Kardell did not speak as a private citizen, but rather in his role as a public employee. Okay, fair enough. Let me put a signage across this line for a second. Would you identify for me the matters of public concern that Mr. Kardell raised that you claim led to his defeat? Certainly. The matters fall into two categories, broadly speaking, but they are interrelated. First, Mr. Kardell spoke out about what he believed was the abuse of authority, taking the form of the county administrator pursuing investigations of personal and professional adversaries using their powers of office. So that's the first measure. There was a long backdrop and run-up to Mr. Kardell raising those complaints. Right. And so as to that one, which seems to me to have spoken of your two claims, perhaps, identify for me where in the record is it in paragraph 66-68 of the declaration that the evidence that you believe created a material fact was put in front of the district attorney? Before I answer, let me make sure that I reserve some time here. I'd like to reserve three minutes, if I could, to answer your question. It's all over the record. But we have a rule that says the district judge is not required to, when there's a large record of searching for material facts, you're required to identify them. And when I read what happened below, you seemed to say, look at paragraphs 66-68. Maybe I have the numbers wrong. I think that's right. It's all there. So tell me where in those paragraphs the allegations by matters are concerned arise. Certainly in those three paragraphs, Mr. Kardell's declaration, while they are certainly not the only evidence submitted below, did receive, let's say, particular focus and oral argument. Now, there are a whole range of other issues that were put into the record and briefed below. There's about ten paragraphs in his declaration, in fact,  Those three paragraphs describe a meeting that he had with Madeleine Zeit, who was the director of human resources for the county at the time. They describe the concerns that he asserted to Zeit, including his belief that he and others in the county had been subjected to improperly motivated investigations. You could look elsewhere in his declaration for additional evidence. Paragraph 53, paragraph 90, paragraph 88 and 89, for example, is all over his declaration. It's also in the notes that were produced by the defendants, some copies of the notes that corroborate Mr. Kardell's assertion that he raised those concerns at that meeting. When I say matters of public concern, I guess in my mind I'm trying to focus on matters that just didn't relate to Mr. Kardell or personnel decisions in the county, but rather to things that the public would be concerned about in terms of the operation of the county. And that is exactly what Mr. Kardell said in his declaration and what the county's documents corroborate that he said at his meeting in February 2012 with the HR director. I understand the county's argument that that's not why he was fired, but that's what the district court never got. That's right, the district court never got the causation or the balancing tests that would come after the plaintiff met his burden. I interrupted you because you said there were two series of events that you think were matters of public concern. You were describing the one which is the administrator using investigative powers. That's right. What was the second? We'll elaborate on the first one very briefly. That's a matter that had been discussed extensively in local media. It was a subject of intense controversy in Lane County, but Mr. Kardell had raised it with others. I'm sorry, very specifically, what if it didn't air in any of the newspapers? What was under discussion in Lane County? In May 2011, there was an article published in the local newspaper, Christian Guard, which described an investigation that the county administrator, defendant Richards, had initiated into the county commissioners with whom she disagreed and filled the open meeting violations. It's related to the open meetings violations. That was perhaps the origin of their dispute that I don't know precisely. For whatever reason, they disagreed. She ultimately accused them, those two commissioners, with whom she had a long-running dispute, of being involved in the improper awarding of economic development grants. That issue came to light in a May 2011 newspaper article. Mr. Kardell raised his concerns in May 2011 with two of his colleagues, both Mr. Orniz, who is the senior attorney who, to get back to your Honor's question, eventually is ultimately forced to retire, and also with Alicia Hayes, who that day in May 2011 acted as county administrator. So the feed goes all the way back to May 2011. It relates to a whole swath of improper investigations that Mr. Kardell had witnessed. So forgive me for interrupting, but I'm not sure I understand the premise of what you're saying right now. Because at page 25 in the appendix, there's the colloquy between the court and counsel for your client. And the court says that the court is having a lot of trouble because of that huge volume of stuff. So, quote, so can you point me to where in the record I can figure out what these conversations are to the degree that you constitute a blowing flame? And all that counsel ever specifically refers to is 66, 67, and 68. Why isn't that binding on you at all? The rest of this is neither here nor there. Well, if we go all the way back to Conniff v. Myers, Your Honor, the court instructs that the analysis of the employee's speech needs to be made based on the whole record. And if you look at more modern cases, varsity, Chateaubriand, those cases describe a fact-intensive search inquiry of the record. That just didn't happen in this case. Are you saying that the law, so I'm not sure I understand your proposition, your claim is if a judge says to a lawyer, I'm having difficulty, I've looked through the record, I'm having difficulty finding where precisely your clients did X, Y, or Z. You should tell me where that is. And the lawyer says, well, it's in paragraph 66, 67, 68 of the declaration. Judge looks at that and concludes, in his opinion, that that doesn't support the claim. And then you say, oh, on your appeal, well, the judge should have looked at document number 45, paragraph 225, and so forth. How can that be? Well, the summary judgment standards requires the plaintiff to bring into evidence upon the shift of the burden to the plaintiff to bring into evidence specific facts showing that there's a genuine dispute in the trial. It doesn't say that only those facts. This is not allowed to rely on the representation of counsel who knows the record better than anyone as to where in the record X will be found. Employers are allowed to lie. Lawyers are allowed to play games with the court. Lawyers are allowed to say to the court one day one thing and another on appeal something different. It's not what you're saying. No, not at all, Your Honor. In fact, at oral argument below, I don't think that trial counsel conceded by any means that those three paragraphs were the only paragraphs relevant. She's half to blame. The case law in this circuit is clear. You can't just go on with appeal and say somewhere in this record is the fact issue. We didn't actually point it out to the judge at all. But now that police have found it, so you can assume that you're stuck with paragraph 66 through 68 as the sole basis for arguing a material dispute of that. Are they enough? I think they should be enough, Your Honor. Yes. And to go back to the previous question, counsel didn't say these are the only paragraphs that support the claim. The judge said, I need your help. This is a big record. I need to find out where in the record is the conversation that you based your claim on. And you said, I don't know if it's you or somebody else. Counsel said, you are used to your side of the case. Your Honor, this paragraph 66 through 68 was the incursion. Now, I agree with you. It's elsewhere too. But let's assume that you're stuck with it, that it has to all be in 66 through 68. Is there enough there to get your guess at the breach, I think? Yes. There is. I'll tell you why. Yeah. Because those paragraphs write fairly, specifically describe concerns that Mr. Cardell raised to the county about investigations that he viewed as improper. He viewed them as abuse of authority, as it's prolonged. Counsel then went on to say the oral argument, that's where it started, namely those three paragraphs. That's where it started. She says, and there's 14,000 pages of discovery in this case, and there's numerous emails that go back and forth between the defendants. So in the next breath, counsel did identify additional documents, and those documents corroborate that Mr. Cardell raised his concerns in January 2012. So if you take those three interviews, if you take those three paragraphs together with the documents, the emails, they identify material factors there. If I'm limited to arguing those three paragraphs? I don't know whether you are. I'm just going to find out what your position is. I think it's just that you're already looking at this in the other cases. All written should say there's no case involving a publicly appointed physician. I like this. He posted a notice. He posted a notice in the bulletin board in the office. That was the extent of his speech about the layoffs that were in question. There are cases involving emails that go up between supervisors. I mean, where do we draw the line? He raised the issue. It's described in those three paragraphs of his declaration. I think it is elsewhere in the record in abundance, including in emails, including in defendants' notes. And all of those issues were before the district court. They're in the record. And Mr. Cardwell's declaration and documents produced by the defendants corroborate his statements. But with that, I think I'll reserve the rest of my time. Farewell. Thank you. Mr. Carter. Good morning. I am Zisa Cord, Carson Whitehead for defendant Alex Carter. And I'm in a slitting time with counsel for Long Beach County, Leigh Ann Richardson. I intend to take a personal attendance. I have time to focus on the free speech and due process notes. The court should affirm the district court's branch of Supreme Judgment because the court correctly called the plaintiff did not speak on matters of public concern in those specific portions of the record. Now, I'm going to assume just for purposes of discussion that we're sure that's right. But as I read them, they describe a meeting on a specific day in which Mr. Cardwell went to somebody representing the county and said, I've got a concern about the increase in the nuisance investigations by Richardson pursuing thirsty letters. And it's not a matter of public concern. But aside the forced retirement of the colleague from Long Beach. I thought, why isn't that a good word? Gee, if I remember it in public and I thought the county or county executive was wasting money on bad investigations, I'd be concerned. I think you're in a different position of the declarations. So that's when Mr. Cardwell walked into Matt Luzak's office and said. I'm reading it. It says, here are my concerns. She wasn't in the office. And they wanted to attempt to call her. She sent an e-mail saying, if you can't meet with me, no. And sent an e-mail. I wanted to talk to her about Richardson and her investigations. She wasn't in my chain of command. And then there's a bunch of e-mails that say, wait, he's raising questions about the investigations. It may be true that none of this led to his firing. I'm willing to, you know, we have to put that aside. But assuming all that to be true, why isn't it sufficient at least to suggest that he raised a matter of public concern? I have two answers to that, Your Honor. One, if you really hone in a little bit on what his declaration says, he said, I had these concerns internally that, you know, I know where you're coming from. But if you look at the paragraph 68, he says, when I first brought this matter to HR, and this matter refers back, does it not, or I'm reading it most differently to, you know, you're quoted as being lost, refers back to the concerns that he sets forth in 66. In 67, he says, I intended to bring this to HR. In 67, he says, I couldn't bring it to the person I wanted to, so I had to bring it to other people. And 68, he says, when I first brought this matter to HR, I requested it, so I investigated it. Why isn't that read as embodying the fact that the concerns that are specified in 66 were raised by him to HR? Well, I think the most correct reading is that he wished to raise those concerns. But I think it's the lack of a direct statement in his declaration. Well, what do we do with the part that says, I conceded to HR that I wanted to concede to him. He told me that HR would handle the matter in-house. If he hadn't raised a concern, what would he have done in-house? So it's clear that Mr. Cardell raised all manner of concerns about his personal treatment. No, but that's not what these three paragraphs are about. These three paragraphs say, I have concerns about the attorney administrator. When I did it in 68, you know, but I know no do they have to raise with her or the board any issues regarding Ms. Richards' investigations, board members, and others. When I first brought this matter, referring back to the sentence before, to HR, I requested it and I was an investigator. I don't know how possible this thing would be. Once I told him that HR would handle the matter in-house, how was I responding by handling the matter in-house, unless the matter had been raised to Ms. Richards? So you're referring to the investigations by Leigh Ann Richards. Those investigations, the primary concern that Mr. Cardell raised going into this meeting was that he was the attorney in between the board of commissioners and the county economic development department was concerned about whether he was personally investigated. So I think the investigation, he referred to the additional investigation of Mr. Cardell. We focused mostly on 66 to 68, but the same time period is covered by paragraph 52, which specifically says, I believe at the time that Ms. Richards was hired, unfounded investigations were a significant waste of attorney's resources, including time and money. Related to a serious business. If you look at paragraph 53, I'm not sure that they're respected in those paragraphs, but I want to just raise a question. 53 says, I ask human resources to look into these concerns directly, right into paragraph 52, which talks about the concerns. And that's what I think 68 refers back to in this conversation, human resources as an item. I would agree that those paragraphs are more express and make a name for themselves. What do you think? Look, I know that you can't mislead the trial judge, but this is a, it's only a 20 page declaration, isn't it? It was a long declaration with hundreds of pages of exhibits. And I think that was the source of the trial court's frustration. It doesn't take very much to mash up paragraph 52 and paragraph 66 to 68, paragraph 98. They're all referring to the same time period, which is December of 2011, January, 2012. It's very specific about who he was talking with and what he said. So why is that not sufficient? Fair enough. So if the trial court did err on that basis, and then the declaration fairly readily would say that I raised concerns about the specific abuse of power, that would be a matter of public concern if that's how the declaration in fact reads. So I think the trial judge got it right here. But even if that were the case, this court can still affirm the granting summary judgment on the third factor, which is causation. Well, as you just suggested, we have hundreds of pages. Now I'm being the district judge. We've got hundreds of pages and lots of exhibits and lots of documents. Why should we do that in the first instance? Why shouldn't we say to the district judge? We concluded that at least this conversation was a matter of public concern, whether or not it led to his firing, whether or not he was otherwise dead or beheaded. You decide in the first instance. Why shouldn't we take that into public hearing in the first instance? I'm going to add to Judge Hurwitz's question, you know, if you force him to look at this record, I would say that a part of this record really says that. And I don't think it would steer Clinton County in a particularly good light. So I would think my argument is narrowed specifically to the defendant, Gardner, who I represent, has appealed of the causal connection between the speech that came out of the HR conversations in January of 2012, that there's no evidence in the record that defendant Gardner took any adverse employment action against the plaintiff on the basis of that speech. How long after that speech was the adverse action taken? The layoff occurred in early May of 2012. The speech happened in January of 2012. And you can see that in the pleadings, there's references to Richardson and others doing mean things to Mr. Cardell. It's my question. Doesn't our case law suggest that when the adverse action occurs in relative close proximity to the protected speech, that may be enough to create a material question of active conversation? I think by proximity is certainly a factor. I don't think merely having a four-month gap, I don't want to define it as fairly. But he was notified before. Four months later is when he was let go, but he was notified earlier. He was notified a couple of weeks, two weeks, I think, in early May. And the official layoff date was in mid-May. So if the court has no further questions, I'll turn the podium over to counsel. Thank you, Mr. Weinberg. Thank you. Good morning. Don Johnson for Lane County. It's me, Hugh Richardson. The plaintiff had oral argument. It clearly went into paragraph 66 or 68. I'm not going to repeat what was discussed by Judge Rickshane at the trial court. There's opinion I can have and proof upon that. They have now, after all this time, attempted to give you a little bit more information. And in their, for example, their reply brief, they raised the issue of what's in the Madeline Zeick notes. And in the notes. Well, they did raise the notes in front of the judge. Yes, they did. They said, it's not always those paragraphs. We've got these emails. Yeah, that's correct. Well, we've got the Madeline Zeick notes. Right. So it's being properly brought to the attention of the trial judge. And they made an attempt in their brief to parse out what they believe from those notes was relevant. And by the way, I'm speaking primarily to the whistleblower statute, which is even more limited circumstances. But they try to parse out from that, those notes, what they think is important. And they say things like, they quote, quote, quote, quote, quote, quote. My point is that after all of this effort, after all of this time, after all of this opportunity, they have never come in and given you a specific complaint, a specific act that was done by Ms. Richardson or anyone else at Lane County that constitutes corruption or impropriety or malfeasance of some kind that would fit within the whistleblower statute. They cite the Huber case, Huber v. Department of Education, in which that person was allowed to proceed to trial because they had specific acts, a HIC violation, an OIR violation. In this case, it kind of comes up with no specific evidence, no specific act. It's not enough to say, I believe this or I, it's my opinion that this is happening. That's not enough. This ties to the whistleblower statute. Let me ask you a question about the whistleblower statute, which you're addressing. What's the difference between the whistleblower statute and the First Amendment claim here? Is there, is there? In other words, it's the same for-purpose discussion that Mr. Cardone and his race has established. It gets to the jury in the First Amendment claim, which I disagree with. I don't disagree with it. I get around to disagreeing as to this in the First Amendment discussion. The objection is that there's no anchorage or anything about it. Is that enough to survive some mutual fear? Also, the whistleblower claim, for instance, it is not enough. The whistleblower statute is specifically far more narrow. It requires, in what they have cited as the mismanagement of funds, that section of the whistleblower statute is far narrower than what might apply in First Amendment cases. So let's, let me ask you the rest of your set of facts. And again, you don't have to tell me the answer, but I'm just going to just assume. Let's assume that Mr. Cardone went to HR and said, I believe Ms. Richards was wasting county money on personal vendettas by investigating people that she doesn't like. And then he was fired. Because of that statement, would that be a violation of the ordinance of the first amendment? It would not. Because that statement would beg the next important, most important question of that is, why do you believe that? What evidence is there on them? I'm just, I'm asking you, not on the causation of the other side. I'm asking you, if you were fired because of that statement, would that violate the use of muster? Why not? Because it doesn't, there's no part of that statement that gives a person who might want to investigate that or think about it or talk about it information about why. Just in every so brief moment. The timing is important here too. This investigation was happening back in May 2011. It was resolved in September 2011. Mr. Cardell doesn't come until January 2012. He's not laid off until May 2012. There's no temporary, temporal correlation between this. How soon was the investigation completed? Well, that's a good, that's an excellent question, because there were multiple investigations, and they don't help us understand what investigations they're talking about. Tell me I understand what investigation you're talking about. What investigation was completed in September 2012? I believe in the materials, it's September 23, 2011. There's a Registered Guard article that discusses the investigation with respect to commissioners. Right. We do not know that that has anything to do with what Mr. Cardell is coming to HR for in January. He does not specify. There were other key things. And, oh, by the way, in Paragraph 67, it clearly says, I think I'm being investigated as a part of this. So we don't know what he's speaking about in terms of investigations. Your argument in the whistleblower statute is that even if he says what he says he said in his declaration, that wasn't sufficient to meet the requirements, he needs to come forward and say, here is why these investigations are improper or that there's misconduct. Let's see where I find that in the statute. So it doesn't seem, again, hypothetical. It comes to mind in a superior way. And I say, judge Biden is wasting money on personal expenses, is traveling all over the country giving speeches, et cetera, et cetera. I don't want to say, and, by the way, the speech was in Nevada the other day or New York the other day. I'm just saying, I think that he's doing bad things. That's not enough to. The reactor will reflect Judge Biden's dangerous denial. How does that help? That's not enough to trigger the whistleblower protection. If we're all in Oregon, I've never been a fan of hypotheticals because I always lose because of them. Yours is different in this case. Because you added a specific statement there. He's traveling around states spending money needlessly in this situation. All we have is, I don't like these investigations. Let me freely admit my ignorance of Oregon law, at least in advance of looking at it again. Tell me where in Oregon law I would find support for your decision that a general statement about wrongdoing is not enough. You need to have facts and things. Well, I would point you first to the statute. It requires that there be a disclosure of mismanagement. I'm not going to quote it. I never read the statute. It's history language. I won't hear it. Well, in the cases that are cited in the materials, think about the general statements about policy, procedures, staffing. Those are not enough. In the only case, the Huber case versus Department of Education, two of those points were not allowed to proceed to trial. Two were, and they were specifically concerns that were raised about a HIPAA violation within that particular employer's area and a prescription dosing dispute that was in violation of the OARs. Those were specific instances of conduct that the court set fit within the statute. We have nothing of that here to attest to it. I'm going to ask you about what the district court held. When I read the district court's disposition of this case, I think he seems to be saying the Oregon claim fails for the same reason that the federal claim fails, which is sort of a comfort. I think it's an exposed matter of public concern. Did the district court make the kind of analysis that you're asking us to make, which is to say, let's look at the Oregon statute. Even if it wasn't a matter of public concern, the complaint wasn't specific enough to conclude it did begin for precisely the reason I stated earlier. He said the statute is narrower. Right, no, I understand that. You're saying that the district court analyzed the case that way. I do not believe that's correct. How did he find out where it is? Well, he spends the first several pages talking about the first amendment claim, and then he really combines it both as does kind of some health science and essentially everyone in this case. Yeah, see, when I read his order, there was a mix of questions that he seemed to conflate to without making a distinction between them. Is that fair? I believe that's fair, and I think the reason that's vague and improper is because the whistleblower statute is narrower, more difficult. If you don't have a first amendment claim, you can't have a whistleblower claim. I'm not sure. I haven't thought about that far enough to tell you that. I'm just saying, you're asking, from my perspective, the reason I ask the question, you're asking a statutory analysis. I'm not sure the Oregon district judge, who took the case, just said they both fell for the same reason. Well, the judge in the case specifically said that there was no substance to these general allegations of, I don't like this investigation. There has to be some specific conduct or character to it. By the way, the same reason everyone's in office is agents. Thank you, Mr. Johnson. Mr. Hunter, you have time remaining. Thank you, Your Honor. First, let me go back to address the second instance of speech that we've alleged we will support in the record, which is the April 27, 2012 email that Mr. Cardell sent to the Board of Commissioners raising his concerns with the forced retirement of a senior land-use attorney in his office. That's not something that we've previously discussed. Why isn't that just a matter of personnel? He thought this guy was doing a good job. He even said he shouldn't be forced to retire. Why is that? If that's a matter of public concern, then isn't the apprehended personnel complaint in the county a First Amendment issue on which you retired based in 1983? The First Amendment does not protect every internal personnel matter. However, in a case like this where it's clearly tied to ongoing concern about the management of the office and the potential abuse of authority, it does rise to that level. The email that Mr. Cardell sent was not titled Steve Origins. It was titled Office of County Counsel. It incorporated by reference an email or a letter that concerned citizens in the previous instance of the Board of Commissioners, specifically asking them to Mr. Gardner, specifically asking Mr. Gardner to consider the impact of his decision-making broadly, not just as to Steve Origins, on the critical plain county function of land use planning. So it's still a matter of allocation of resources. If every decision that's made to hire or fire or promote or not promote or allocate lawyers to this matter or that matter, an objection that is made in the ordinary course of things, then everything has now become 1983. Actually, I mean, this argument just starts me as not as much of a leader than you're ever arguing. That's why I told you at first that's not a particularly good argument. Fair enough. That's why you said there's two minutes on it. Fair enough. That's why I didn't spend much time on it. But I will say we don't pretend that every such matter qualifies. If you look at Pickering, for example, a case from a long time ago, there's a recognition in that case that raising questions about the allocation of school budgets between athletics and academics is a matter of public concern, so that's internal budgeting of the title. So is there any evidence that Mr. Voorhees' hiring or firing or allocation was a matter of public concern? Are there editorials in the paper in between an investigation? Anything that would suggest other people, other citizens not inside the office had concerns about Mr. Voorhees? Yes, that's clear from the concerned citizens that Mr. Cardell was responding to which had been sent to Mr. Cardell. Let me just very briefly address a point that Mr. Johnson made, which I believe is incorrect. He asserted that the U.S. employer statute is much narrower than free speech protections. I mean, that's incorrect. In fact, at Huber, the Oregon Court of Appeals affirmed the dismissal of a Section 1983 claim but reversed the dismissal of a whistleblower claim, meaning that the whistleblower claim was broader, and it's broader for the reason that the whistleblower does not have to speak in his capacity as a private citizen. He can speak in his capacity as an employee. Now, the speech, the content of the speech is analogous to the Section 1983 standard. The statute expressly includes abuses of authority, and all it requires the employee to show is that he disclosed evidence that he reasonably believed pointed to abuses of authority or mismanagement of the waste of public funds, and Mr. Cardell's declaration does just that. Thank you, Your Honor. Thank you. Thank you, counsel. The argument of the case is submitted. That will conclude the oral argument calendar for today. The court stands adjourned.
judges: Bybee, Hurwitz, Rakoff